## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED, | |
| *Plaintiffs,* | |
| vs. | Case No. 16-01015-EFM-GLR |
| CHS McPHERSON REFINERY, INC. (F/K/A NATIONAL COOPERATIVE REFINERY ASSOCIATION), | |
| *Defendant.* | |

## MEMORANDUM AND ORDER

Plaintiffs Energy Intelligence Group, Inc., and Energy Intelligence Group (UK) Limited (together, Plaintiffs or "EIG") have sued Defendant CHS McPherson Refinery, Inc. (the "Refinery") for copyright infringement. This matter comes before the Court on the Refinery's Motion for Referral to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b) and a Concurrent Stay (Doc. 98). For the reasons stated below, the Court denies the Refinery's motion.

### I.        Factual and Procedural Background

EIG has been publishing newsletters and other publications for the global energy industry for over sixty years. It sells subscriptions to a number of publications, two of which include *Oil*

*Daily* and *Petroleum Intelligence Weekly*. From June 2004 to about 2016, EIG sought to register *Oil Daily* with the United States Copyright Office using Form G/DN. This form allows an applicant to register multiple newspapers and newsletters in a single application. From 2004 to 2016, EIG sought to register *Petroleum Intelligence Weekly* with the Copyright Office using Form SE. This form allows an applicant to register an individual issue of a serial, *e.g.*, a newsletter, periodical, magazine, annual, or journal.

The Refinery maintained a single subscription to *Oil Daily* from 1992 through May 15, 2015, and a single subscription to *Petroleum Intelligence Weekly* from 1982 through June 13, 2016. Originally, the Refinery received the publications in print and would route each printed publication through its office for several executives to read. In the late 1990s, EIG began distributing the publications electronically. EIG alleges that the Refinery continued to distribute *Oil Daily* and *Petroleum Intelligence Weekly* to its employees by making a copy of the publication and distributing the copy in .pdf attachments via email. According to EIG, the Refinery's actions of copying and distributing the publications violate the subscription agreements.

EIG commenced this action on January 18, 2016, and filed an Amended Complaint on August 16, 2016, alleging that the Refinery willfully infringed the copyrights of its *Oil Daily* and *Petroleum Intelligence Weekly* publications. The Refinery denies the infringement and the validity of EIG's copyright registrations. The parties have filed cross motions for summary judgment, which are currently pending before the Court. In addition, the Refinery has filed the current motion, which relates to the validity of EIG's copyright registrations. The Refinery contends that EIG made knowing misrepresentations when preparing Form G/DN for the *Oil Daily* publications and asks the Court to refer this matter to the Register of Copyrights to

determine whether it would have refused registration if it had known of these misrepresentations.[1]  In addition, the Refinery asks for a concurrent stay of the proceedings.

## II.    Legal Standard

Section 411(b)(1) of the Copyright Act states:

A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless-

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.[2]

Section 411(b)(2) requires that "[i]n any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."[3]

The Refinery brings this motion under § 411(b)(2)—a procedural mechanism that has rarely been invoked in the federal courts and never reviewed or interpreted by the Tenth Circuit.[4] Those courts that have interpreted § 411(b)(2) have determined that the provision is mandatory, meaning that it requires district courts to solicit the advice of the Register of Copyrights if the

---

[1] The Refinery does not allege that EIG made knowing misrepresentations with regard to the *Petroleum Intelligence Weekly* copyright applications.  Therefore, the only copyright registrations at issue in this motion are those for *Oil Daily*.

[2] 17 U.S.C. § 411.

[3] *Id.*

[4] *See PalmerKane, LLC v. Rosen Book Works, LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) (noting that the procedure set forth in 17 U.S.C. § 411(b)(2) has rarely been invoked).  Section 411(b)(2) was amended in 2008 as part of the PRO IP Act.  *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013).  The amendment added the new procedure requiring referral to the Register of Copyrights.  *Id.*

statutory conditions set forth in § 411(b)(1)(A) are satisfied.[5]  For example, in *DeliverMed*, the Seventh Circuit held that the district court committed reversible error when it invalidated a copyright registration without first consulting the Register of Copyrights as required by § 411(b)(2) even though the parties had not requested the court to do so.[6]

The language of § 411(b)(2) requires the court to consult the Copyright Office when a party simply *alleges* the inclusion of knowingly inaccurate information in the copyright application.[7]  But, federal courts have recognized that this procedure creates a serious potential for abuse because it allows infringers to delay proceedings by simply alleging technical violations of the underlying copyright registrations.[8]  Thus, the courts have concluded that before seeking the Register's advice on materiality, the party seeking invalidation of the copyright must first establish the preconditions to validity—(1) that the application contained a misstatement of fact and (2) that the misrepresentation was knowingly included on the application.[9]  This method "appropriately balances the Copyright Office's statutory right to weigh in on the materiality of a knowing misrepresentation . . . against the district court's 'inherent power to control its own docket and to prevent abuse in its proceedings.' "[10]  Therefore, before this Court refers the matter

---

[5] *See, e.g., DeliverMed Holdings*, 734 F.3d at 623 ("[T]he statute obligates courts to obtain an opinion from the Register . . . ."); *Schenck v. Orosz*, 105 F. Supp. 3d 812, 818 (M.D.Tenn. 2015) ("By its terms, § 411(b)(2) requires the court to seek an advisory opinion from the Register in any case that 'alleges' inaccurate information under § 411(b)(1) that, if known to the Register, would have caused the Register to refuse registration.").

[6] *DeliverMed*, 734 F.3d at 624.

[7] 17 U.S.C. § 411(b)(2).

[8] *See DeliverMed*, 734 F.3d at 625 ("Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future."); *Schenck*, 105 F. Supp. 3d at 818.

[9] *PalmerKane*, 188 F. Supp. 3d at 349 (citing *DeliverMed*, 734 F.3d at 625).

[10] *Id.* (quoting *Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc.*, 2014 WL 4377852, at *5 (S.D.N.Y. Sept. 4, 2014)).

to the Register of Copyrights, the Refinery must demonstrate (1) that EIG's *Oil Daily* registration applications included inaccurate information and (2) that EIG knowingly included this inaccurate information in the applications.

### III.    Analysis

The Refinery argues that EIG knowingly included inaccurate information when seeking to register *Oil Daily* using Form G/DN with the Copyright Office.  Form G/DN may be used for group registration of daily newspapers and newsletters, provided that the applicant meets the following requirements:

> (1) [The daily newsletter is published] at least two days each week and the newsletter must contain news or information of interest chiefly to a special group . . . ;
> (2) The works must be essentially all new collective works or all new issues that have not been published before;
> (3) Each issue must be a work made for hire;
> (4) The author(s) and claimant(s) must be the same person(s) or organization(s) for all the issues;
> (5) All the items in the group must bear issue dates within a single calendar month under the same continuing title;
> (6) The deposit for newsletters registered under this section is one complete copy of each issue included in the group . . .;
> (7) Registration is sought within three months after the publication date of the last issue included in the group.[11]

If all of these requirements are met, an applicant may register the newsletters published during that time period in a single application and with a single deposit fee.  If the applicant cannot meet all of the requirements, it is required to submit individual copyright application for each publication.

The top of Form G/DN contains instructions for filling out the application.  They state that the conditions "must be met" to use the form and that "if any one of the conditions does not

---

[11] 37 C.F.R. § 202.3(b)(9).

apply, [the applicant] must use Form SE."  Form G/DN requires, among other things, that the applicant provide "the name and address of the author/copyright claimant in these works made for hire," and to provide the "author's contribution," which is to be indicated by checking the box(es) that apply—editing, text, compilation,[12] or other.  For those applications dated June 2004 through October 2007, EIG claimed contribution in the compilation, editing, and text in *Oil Daily*.  After 2007, EIG no longer claimed contribution in the compilation of *Oil Daily* but it did claim contribution in the text and editing.

The Refinery claims that EIG has not met the second, third, and fourth requirements set forth above to register *Oil Daily* with Form G/DN.  Specifically, the Refinery asserts that (1) EIG is not the author or exclusive licensee of all content within *Oil Daily*; (2) *Oil Daily* is not essentially an all-new collective work;[13] and (3) the editing and text of *Oil Daily* is not a work made for hire.  EIG disputes these claims arguing that it properly registered *Oil Daily* using Form G/DN.  It further argues that even assuming EIG included inaccurate information on Form G/DN, the Refinery has not demonstrated that the information was included on the application with the knowledge that it was inaccurate.

## A.    Declaration of Ralph Oman

Before the Court examines whether EIG's use of Form G/DN was appropriate, the Court must address the Declaration of Ralph Oman.  This Declaration was offered by the Refinery in

---

[12] "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

[13] "A 'collective work' is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101.  Compilations are also known as "collective works."  U.S. Copyright Office, Circular 14, Copyright in Derivative Works and Compilations (rev. 2013).

support of its argument that the Court must refer EIG's copyright registrations to the Register of Copyrights. Although the Declaration discusses EIG's copyright registrations for *Oil Daily*, it was originally prepared and offered in another case in the United States District Court for the Southern District of Texas—*Energy Intelligence Group v. Kayne Anderson Capital Advisors*.[14] EIG has not moved for the Court to strike the Declaration. However, it has asked the Court to disregard it on the basis that it is impermissible expert testimony. In the alternative, EIG asks the Court to reopen discovery so that it may retain an expert to rebut Oman's opinions.

The Court declines to consider the Oman Declaration in its analysis of the motion. First, the submission of the Declaration is untimely. An expert witness is "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," who testifies "in the form of an opinion."[15] The Federal Rules of Civil Procedure provide for disclosure and timing requirements for expert witnesses who are "retained or specifically employed to provide expert testimony."[16] Oman was neither a fact witness nor a party to the other pending litigation in which his report was initially offered. He characterizes his Declaration as setting forth opinions regarding EIC's copyright registrations and opines on how the Copyright Office would have handled the applications if it was aware of the alleged inaccuracy. Oman states that his opinions

---

[14] No. H-14-1903. Kayne Anderson is another one of EIG's subscribers against whom EIG is asserting copyright infringement. Kayne Anderson also filed a motion asking the district court for the Southern District of Texas to refer EIG's copyright registrations for *Oil Daily* to the Register because EIG improperly used Form G/DN. The district court denied the motion. *Kayne Anderson*, 2017 WL 3206896, at *6 (S.D. Tex. 2017). EIG asks this Court to adopt the district court's findings and conclusions. Because the Court does not have the parties' briefs and arguments in *Kayne Anderson* before it, the Court will conduct its own analysis. The Court notes, however, that much of the analysis is similar to that of the district court.

[15] Fed. R. Evid. 702.

[16] Fed. R. Civ. P. 26(a)(2)(B).

are based on his knowledge and experience as a former Register of Copyrights. Accordingly, Oman is a retained expert witness and his Declaration is an expert opinion.

Under the Federal Rules of Civil Procedure, the Refinery was required to disclose all witnesses retained to provide expert testimony "at the times and in the sequence that the court orders."[17] The Court's Scheduling Order in this case required all experts to be disclosed by January 23, 2017. The Refinery did not disclose Oman or his Declaration until July 17, 2017, six months after the Court's deadline. Thus, the Oman Declaration is an untimely expert report that violates Rule 26 of the Federal Rules of Civil Procedure.

The Refinery argues that it was not required to disclose Oman as an expert because it does not intend to use him as an expert at trial. The Refinery cites a single district court opinion from New Jersey in support of this argument—*In re Mercedes-Benz Anti-Trust Litigation*.[18] In that case, the district court refused to exclude an expert affidavit that was used in support of the defendants' motion for summary judgment but who would not be used at trial.[19] The district court relied on the language of Rule 26(a)(2) which requires a party to disclose the identity of any witness it may "use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."[20] But, this Court is not bound by that decision, and its applicability is limited to its facts. Unlike this case, the deadline for identifying experts had not yet passed when the defendants filed their motion for summary judgment, and thus there was no violation of Rule 26(a)(2)(A).[21]

---

[17] Fed. R. Civ. P. 26(a)(2)(D).

[18] 225 F.R.D. 498 (D.N.J. 2005).

[19] *Id.* at 505.

[20] Fed. R. Civ. P. 26(a)(2)(A).

[21] *In re Mercedes-Benz*, 225 F.R.D. at 505.

The Court also disregards Oman's opinions on the basis that they contain overreaching and improper legal conclusions.[22]   For example, Oman improperly opines regarding EIG's intent while preparing the *Oil Daily* applications, whether the *Oil Daily* registrations should be referred to the Copyright Office, and whether the Copyright Office would consider the alleged inaccuracies in the applications to be material.   The Refinery argues that the Declaration is "valuable to this Court's determination" and that it provides an "advisory opinion" based on his personal experiences.   But this Court is capable of conducting its own legal analysis based on the statutes, case law, and published guidance from the Copyright Office.   In addition, although the Declaration presumably concerns the same copyright registrations that are at issue in this case, it was prepared for an entirely different case.   Some of the opinions expressed in the Declaration relate to arguments being made in the *Kayne Anderson* case that are not being made in this case. To the extent the Declaration addresses those arguments, it is irrelevant.   Accordingly, the Court declines to consider the Oman Declaration in its analysis of whether EIG's copyrights should be submitted to the Register.

**B.     EIG's Use of Form G/DN to Register *Oil Daily* with the U.S. Copyright Office**

*1.     Authorship of Oil Daily*

*Oil Daily* is comprised of articles written by EIG's employees, articles that it has licensed from Reuters, and articles that were previously published in other publications produced by EIG. The Refinery contends that because EIG is not the author of all the content of *Oil Daily*, then it is not the author for the complete issues of *Oil Daily* for purposes of group registration.   In

---

[22] *See, e.g., A.E. v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (stating that an expert may not apply the law to the specific facts of the case to form legal opinions).

response, EIG asserts that because it produces the entire issue of *Oil Daily*, then it is the author for registration purposes.

The Court agrees with EIG. The fact that *Oil Daily* contains articles licensed from a third party does not prevent it from using Form G/DN to register the publication. As discussed above, Form G/DN allows an applicant to claim contribution in the compilation, editing, and text of a newsletter. Circular 62A, which is a publication produced by the U.S. Copyright Office that contains instructions for filling out Form G/DN, explicitly describes what registration using this Form covers.[23] It states:

> For each issue in the group, registration on Form G/DN includes all material in which the claimant named at space 2 owns the copyright. This includes the authorship of compiling and editing the work as a whole as well as the content of any contributions (for example, text or photos) done by employees of the claimant as works made for hire. In addition, it includes any independently authored contributions (not done by employees) in which all rights have been transferred to the claimant by the contributors. These other contributions are included even though the individual contributors are not named on Form G/DN. *The registration does not include any independently authored contributions in which all rights have not been transferred to the claimant.*[24]

Based on this language, Circular 62A recognizes that a newsletter subject to an application under Form G/DN may include independently authored contributions and that these contributions will not be covered by the registration. This is consistent with the Compendium of U.S. Copyright Office Practices, which contains instructions for applicants preparing Form G/DN and examiners

---

[23] U.S. Copyright Office, Circular 62A, Group Registration of Newspapers and Newsletters on Form G/DN (rev. May 2009).

[24] *Id.*

reviewing such applications.[25]   The language in the Compendium implies that a newsletter subject to this application may contain independently authored content:

> As a general rule, the U.S. Copyright Office may accept a claim in text or editing if the author contributed a sufficient amount of written expression to each issue. The Office may accept a claim in compilation if there is a sufficient amount of creative expression in the selection, coordination, and/or arrangement of material that appears in each issue.[26]

The use of the language "sufficient amount" implies that there may be content in the newsletter that the applicant did not contribute.  Nowhere in the Compendium does it state that an applicant cannot use Form G/DN to register a newsletter containing independently authored content.  Indeed, the Refinery simply has not pointed to, and the Court cannot find, any support for the Refinery's position that an applicant cannot use Form G/DN to register a group of newsletters because those newsletters may also contain third party content.

To the extent that EIG claimed contribution in the compilation of *Oil Daily* from 2004 to 2008, this conclusion is also supported by the Copyright Act.  The Copyright Act provides the following guidance regarding the scope of copyright registrations in compilation works:

> The copyright in a compilation or derivative work *extends only to the material contributed by the author of such work*, as distinguished from the preexisting material employed in the work, and *does not imply any exclusive right in the preexisting material*.  The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.[27]

---

[25] U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, 2014 WL 7749586, § 1112 (rev. 2014) [hereafter "Compendium"].

[26] *Id.* § 1112.2.

[27] 17 U.S.C. § 103 (emphasis added).

Thus, to the extent EIG claimed contribution in the compilation of *Oil Daily*, its copyright extended only to the material contributed by EIG and not any right in the licensed Reuters articles.

The Refinery argues that because EIG claimed compilation rights in *Oil Daily*, it also had a duty to disclaim any preexisting material.  Under 17 U.S.C. § 409(9), a copyright application for a compilation work must include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  The Refinery argues that EIG has not met this requirement—and thus provided inaccurate information on Form G/DN—because it did not identify the Reuters articles in its applications claiming compilation.  In response, EIG points out that it provided deposit materials containing complete issues of all the *Oil Daily* newsletters claimed in their applications and for those issues in which the Reuters articles appeared, it gave proper and noticeable attribution.  According to EIG, the Copyright Office was therefore aware of the third-party material in *Oil Daily*.  EIG also points out that there is no space on Form G/DN where a copyright applicant could actually state the existence of properly licensed third-party content.

The Court recognizes that the Copyright Act requires an applicant to identify any preexisting works in an application to register a compilation.  Yet, unlike other applications, Form G/DN does not contain any lines or areas that allow an applicant to identify these works.  Arguably, the applicant may identify preexisting works in the line titled "Other" when describing the applicant's contribution to the work, but the text box provided for such information in the online application only supports a limited number of characters and certainly not enough characters to fully identify preexisting works.  Therefore, it's not clear to the Court how the applicant is supposed to identify these preexisting works in the application.

The Compendium appears to obtain an exception to the statutory requirement of identifying preexisting materials in an application.  It provides that when an applicant fails to identify preexisting material in a compilation for a Standard Application, the examiner may still accept the application if the scope of the claim is clearly identified by the deposit copies.[28] Unlike Form G/DN, the Standard Application contains a specific entry for the applicant to state any limitations to the applicant's claim, including identifying preexisting materials.  The Court can only infer from this that if the Copyright Office is willing to overlook an applicant's failure to identify preexisting works in a Standard Application, where there is a specific line asking the applicant to name these works, it arguably would do the same in the case of Form G/DN where there is no line for the applicant to provide such information.

The *Oil Daily* issues submitted to the Copyright Office all contained conspicuous attribution to the licensed Reuters articles.  Practically speaking, the Court finds that this satisfies the statutory requirement that the applicant identify preexisting works in a compilation. Therefore, the Refinery has not shown that EIG submitted inaccurate information in regard to authorship when completing Form G/DN.

2.    *All New Collective Work*

One of the requirements for group applications is that the work must be "essentially all new collective works or all new issues that have not been published before."[29]  The Refinery argues that *Oil Daily* is not an "all new collective work" or an "all new issue" because some of

---

[28] Compendium, 2014 WL 7749581, § 621.9(D)(5) (rev. Dec. 2014).  The Standard Application contains spaces which require the applicant to list previously registered works and preexisting materials.

[29] 37 C.F.R. § 202.3(b)(9)(ii).

the *Oil Daily* issues contain previously published Reuters articles or previously published articles that first appeared in an EIG sister-publication. The Court disagrees.

The Refinery's position narrowly interprets the requirement for an "all new collective work" or an "all new issue." Under its position, each article within each published newsletter must be completely new—never published before—for an applicant to use Form G/DN. The Refinery has not offered any authority supporting this interpretation and the Court has not found any. Furthermore, the language of the regulation does not support this position. The regulation requires an "all new collective work[] or an all new issue[] that ha[s] not been published before."[30] This refers to the work as a whole, not the individual components within the collective work or issue.

The parties do not dispute that each issue of *Oil Daily*, as an individual collective work, is a unique and previously unpublished issue of the publication. The inclusion of an article from a sister publication or a licensed article from Reuters does not transform the entire issue into a previously published work. Therefore, EIG has met this requirement for using Form G/DN.

### 3.    *Work Made for Hire*

Under 37 U.S.C. § 202.3(b)(9)(iii), for a newsletter to qualify for group registration, "each issue must be a work made for hire." A work made for hire is defined as "a work prepared by an employee within the scope of his or her employment."[31] The employer is the author of a work made for hire.[32]

---

[30] *Id.*

[31] 17 U.S.C. § 101.

[32] *Id.*

The Refinery argues that *Oil Daily* cannot satisfy this requirement because the entirety of the editing and text in each *Oil Daily* publication was not a work made for hire. Once again, the Refinery has parsed the language of the regulation so that it would apply to each component of an issue instead of the issue as a whole. The regulation specifically states that "each issue" must be a work made for hire. It does not state that each issue, and its component articles, must be a work made for hire. In this case, the Refinery has not come forward with any evidence disputing that EIG or its employees did not direct or control the creation of each issue of *Oil Daily* as a whole. As such, each issue of *Oil Daily* qualifies as a work made for hire.

The Refinery also attempts to extend this argument to EIG's decision to claim contribution in the editing and text of *Oil Daily*. The Refinery argues that by claiming contribution for editing and text on Form G/DN, EIG knowingly provided inaccurate information because the Reuters articles were not a work made for hire. But, the Copyright Office Compendium states that "the U.S. Copyright Office may accept a claim in text or editing if the author contributed a sufficient amount of written expression to each issue."[33] This language indicates that a newsletter may contain content for which is not a work made for hire or which the applicant does not own the copyright. However, the applicant may still use Form G/DN to register the newsletter and may claim contribution in editing or text if the applicant contributed a certain amount of written expression.

Neither the federal courts nor the U.S. Copyright Office has stated what constitutes a "sufficient amount of written expression" for an applicant to claim contribution in text and editing under Form G/DN. Furthermore, the parties dispute how much original content EIG

---

[33] Compendium, 2014 WL 7749586, § 1112.2.

contributed to each issue of *Oil Daily*.  EIG contends that the amount of Reuters articles and articles from a previously published application are *de minimis*, while the Refinery contends that they make up a significant amount of each issue.  The parties have provided the Court a single issue of *Oil Daily* for review.  Assuming that this issue is representative of the newsletter's content, the Court concludes that EIG contributed a sufficient amount of written expression to support claims of text and editing in each issue.  Thus, the Court is not persuaded that EIG provided inaccurate information by claiming contribution in the editing and text of *Oil Daily*.

## C.    Knowledge

Under 17 U.S.C. § 411(b)(2), a question of validity should be referred to the Register of Copyrights if "inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate."  The parties dispute the degree of knowledge an applicant must possess to satisfy this requirement.  EIG argues that the Refinery must demonstrate that EIG intended to defraud the Copyright Office when it filed its applications, while the Refinery argues that it only needs to show that the information EIG submitted in the applications was inaccurate.  The Refinery believes that it has met this burden because it submitted evidence that EIG's editor-in-chief knew that it was only allowed to republish the Reuters articles and could not obtain a copyright registration for them.

In support of its argument, the Refinery relies on *Roberts v. Gordy*, a case in which the District Court for the Southern District of Florida concluded that the plaintiff erroneously registered three different registrations for a musical composition.[34]  Having found earlier that the applications for the registrations contained inaccurate information, the court had issued a

---

[34] 181 F. Supp. 3d 997, 1014 (S.D. Fla. 2016), rev'd, 877 F.3d 1024 (11th Cir. 2017).

§ 411(b) request to the Register to determine whether the inaccuracies were material.[35]   The Register responded affirmatively and stated that based on the misrepresentations she would have refused copyright registration.[36]   In a subsequent motion before the court, the plaintiffs argued that the registrations were not invalid because the court was required to find that it had knowingly and intentionally defrauded the Copyright Office when submitting the applications.[37] But the district court disagreed, reasoning that "§ 411(b) says nothing about an intent to defraud the Copyright Office. Rather, the plain text of the statute requires only that the application be made with knowledge that it was inaccurate."[38]   The district court further determined that "when the error on the registration form is not a minor technical error, but rather a material one that would have caused the Register to refuse registration, 'this issue is more appropriately dealt with by ascertaining whether the registration should have issued in the first place, and that analysis does not require a showing of fraud.' "[39]   Accordingly, the district court concluded that based on the evidence before it the copyright registrations were invalid.[40]

But, the Refinery's reliance on *Roberts* is misplaced in light of the Eleventh Circuit's recent decision reversing and remanding the district court's analysis.[41]   Contrary to the district court's opinion, the Eleventh Circuit held that before invalidating a copyright registration, the

---

[35] *Id*. at 1009.

[36] *Id*. at 1010.

[37] *Id*.

[38] *Id*. at 1010 (quoting 17 U.S.C. § 411(b)) (internal quotation marks omitted).

[39] *Id*. at 1010-11 (quoting *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc*., 896 F. Supp. 2d 223, 233 (S.D.N.Y. 2012)).

[40] *Id*. at 1114.

[41] 877 F.3d 1024.

court must determine whether the applicant has the required degree of scienter and that scienter is one of intentional and purposeful concealment.[42]  The Circuit therefore concluded that because the defendants never offered any argument or theory as to why or how the plaintiffs committed fraud on the copyright office, the district court erred in its application of the law.[43]

The Eleventh Circuit is not the only court to hold that the knowledge element of § 411(b) requires a showing of fraud on the copyright office. The Ninth Circuit has also held that inadvertent mistakes on copyright registrations do not invalidate a copyright unless the alleged infringer relied on the mistake to its detriment or the claimant intended to defraud the Copyright Office.[44]  The Tenth Circuit has not addressed the scienter necessary to validate a copyright registration.  The Court agrees, however, with the Eleventh and Ninth Circuits that to satisfy the knowledge element of § 411(b), the Refinery must show that EIG intended to defraud the Copyright Office.  This interpretation is supported by the plain language of the statute, which requires the inaccurate information to be "included on the application . . . with knowledge that it was inaccurate."[45]  This interpretation is also supported by the Register of Copyrights.  In the Annual Report of the Register of Copyrights for the fiscal year ending September 30, 2009, the Register stated that the PRO IP Act amended § 411 "to create a new procedure . . . that requires

---

[42] *Id.* at 1029.

[43] *Id.* at 1030.

[44] *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 853 (9th Cir. 2012); *see also Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 520 (S.D.N.Y. 2017) (stating that the applicant must subjectively know of the inaccuracy when preparing the application).

[45] 17 U.S.C. § 411(b).

courts to seek the advice of the Copyright Office on issues *that may involve fraud on the Copyright Office.*"[46]

Even assuming that EIG included inaccurate information in its copyright applications, the Refinery has not demonstrated that it included this information with the intent to defraud the Copyright Office.  The only evidence the Refinery offers on this element is the deposition testimony of *Oil Daily*'s editor-in-chief, Tom Wallin.  He testified that he was aware that EIG was only permitted to republish the Reuters articles. The Refinery contends that based on this testimony, EIG knew or should have known that when it submitted copyright applications for the editing and text of *Oil Daily* that this information was inaccurate.  The Court disagrees.  Even if EIG could not use Form G/DN to obtain copyright registration for *Oil Daily*, nothing about this testimony indicates that EIG knew this or that it intentionally hid or disguised its inclusion of the Reuters articles form the Copyright Office.  In fact, the evidence offered by EIG suggests just the opposite.  EIG has submitted the affidavit of Deborah Brown, who prepared the copyright applications for *Oil Daily*. She averred that she believed Form G/DN was the correct application for *Oil Daily*, that that the applications were filed correctly to the best of her knowledge, and that no information was provided to mislead the Copyright Office.  Accordingly, the Refinery has failed to demonstrate that assuming EIG provided inaccurate information on its registration applications, EIG did so with the intent to defraud the Copyright Office.

In sum, the Court concludes that EIG did not provide inaccurate information on Form G/DN when it applied for copyright registration for *Oil Daily*.  Even assuming EIG provided inaccurate information, such information was not included with knowledge that it was

---

[46] U.S. Copyright Office, Annual Report of the Register of Copyrights, at 9 (2009) (emphasis added).

inaccurate. Therefore, the Court denies the Refinery's motion to refer this matter to the Register of Copyrights and to stay the case.

**IT IS THEREFORE ORDERED** that CHS McPherson Refinery Inc.'s Motion for Referral to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b) and a Concurrent Stay (Doc. 98) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 17th day of January, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE