# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ENERGY INTELLIGENCE GROUP, INC.
and ENERGY INTELLIGENCE GROUP
(UK) LIMITED,

    *Plaintiffs,*

vs.

    Case No. 16-01015-EFM

CHS McPHERSON REFINERY, INC.
(F/K/A NATIONAL COOPERATIVE
REFINERY ASSOCIATION),

    *Defendant.*

## MEMORANDUM AND ORDER

A jury trial was held in this copyright infringement case from May 14 through May 21, 2018. The jury awarded Plaintiffs Energy Intelligence Group, Inc., and Energy Intelligence Group (UK) Limited (collectively "EIG") an award of $1,119,750 in statutory damages based on Defendant CHS McPherson Refinery, Inc.'s (the "Refinery's") infringement of its copyrighted publications. EIG now moves for its attorneys' fees and costs under 17 U.S.C. § 505 (Doc. 181). The Refinery opposes EIG's motion and moves for its attorneys' fees and costs under Fed. R. Civ. P. 68 (Doc. 180). For the reasons set forth below, the Court grants in part and denies in part both motions.

## I. Factual and Procedural Background

A detailed history of the parties' business relationship is set forth in a prior opinion.[1] In short, EIG contends that the Refinery copied and distributed its *Oil Daily* and *Petroleum Intelligence Weekly* publications in violation of its subscription agreements from June 2004 through January 2016. Specifically, EIG contends that the Refinery purchased a single subscription to *Oil Daily* for use by Refinery employee Galen Menard and a single subscription to *Petroleum Intelligence Weekly* for use by Refinery employee Jim Loving. These subscriptions were routinely forwarded by electronic mail to multiple Refinery employees. EIG filed this lawsuit on January 18, 2016, seeking statutory damages, attorney's fees, and costs for the Refinery's alleged copyright infringement.

On February 5, 2018, the Refinery made a Rule 68 offer for judgment in the amount of $750,000. EIG ignored this offer. On April 25, 2018, the Refinery made a second Rule 68 Offer for Judgment in the amount of $ 1,500,000. Specifically, this offer was made "to settle fully and completely all claims for relief by [EIG] including any and all claims for attorneys' fees and costs, pre-judgment interest and other costs and disbursements." EIG did not respond to the offer, and therefore it also expired as unaccepted.

The Court held a jury trial from May 14 through May 21. The jury found that the Refinery willfully infringed 571 copyrighted works of *Oil Daily* between January 18, 2013, and January 18, 2016; that EIG knew or should have known on or before January 18, 2013, that the Refinery was infringing their copyrights in *Oil Daily*; and that the Refinery did not have an implied license for *Oil Daily*. The jury also found that the Refinery willfully infringed 117

---

[1] *See* Doc. 120.

copyrighted works of *Petroleum Intelligence Weekly*; that EIG knew or should have known on or before January 18, 2013, that the Refinery was infringing its copyrights in *Petroleum Intelligence Weekly*; and that the Refinery did not have an implied license for *Petroleum Intelligence Weekly*. The jury awarded $1,500 in statutory damages for each work of *Oil Daily* infringed and $2,250 for each work of *Petroleum Intelligence Weekly* infringed. In total, the jury awarded EIG $1,119,750 in statutory damages.

Following trial, EIG moved for its attorneys' fees in the amount of $2,373,381.25 and its costs in the amount of $274,531.91. The Refinery disputes that EIG is entitled to either amount. The Refinery also moved for its post-offer attorneys' fees and costs under Rule 68. The Refinery claims that it is entitled to $291,392 in attorneys' fees and $41,324.65 in costs it incurred after making its second offer for judgment on April 25, 2018. The parties have met pursuant to Local Rule 54.2(a) regarding their respective applications for fees and costs. Therefore, the parties' motions are ripe for the Court's consideration.

## II. Analysis

**A.  EIG is the prevailing party.**

Section 505 of the Copyright Act states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.[2]

---

[2] 17 U.S.C. § 505.

To be considered a prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."[3] "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay," and constitutes a change in the legal relationship between the parties.[4] In this case, EIG is the prevailing party under § 505 of the Copyright Act because the jury found that the Refinery infringed 688 of EIG's copyrighted works and awarded EIG $1,119,750 in statutory damages.

**B.      EIG is not entitled to its attorneys' fees.**

The Copyright Act gives the district court discretion to award a prevailing party attorney's fees, but it does not provide any precise rule or formula for when or how to do so.[5] The Supreme Court has established two important restrictions for district courts to abide by when making this determination.[6] First, a district court may not award attorney's fees as a matter of course.[7] Instead, it must make a particularized, case-by-case assessment.[8] Second, a court may not treat prevailing plaintiffs and prevailing defendants differently.[9]

---

[3] *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (quoting *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

[4] *Id*. at 113.

[5] 17 U.S.C. § 505; *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1984-85 (2016)

[6] *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34 (1994)).

[7] *Id*.

[8] *Id*.

[9] *Id*.

In addition, the Supreme Court has set forth a list of non-exclusive factors a district court may consider in determining whether to award attorney's fees: objective unreasonableness (as to both factual and legal arguments in the case), motivation, the need in particular circumstances to advance considerations of compensation and deterrence, and frivolousness.[10] The Court will review each of the factors below in evaluating whether to award EIG its attorneys' fees in this case.

*1. Objective reasonableness*

In *Kirstaeng*, the Supreme Court directed district courts to "give substantial weight to the objective reasonableness of the losing party's position" while still providing "due consideration" to other factors.[11] The Court noted that the objective-reasonableness approach "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation."[12] Here, EIG contends that the Refinery took several unreasonable positions during the litigation of this case. Specifically, EIG points to the Refinery's failure to mitigate defense, the Refinery's assertion that EIG could only recover damages for each group registration, and the Refinery's motion for referral to the Register of Copyrights. The Refinery disputes that these positions were unreasonable and further argues that EIG's prosecution of its claims were unreasonable, particularly EIG's settlement offers.

    a. The Refinery's defenses

EIG first asserts that the Refinery's continued assertion of the failure to mitigate defense was unreasonable. The Refinery relied heavily on this defense, taking fact and expert discovery

---

[10] *Fogerty*, 510 U.S. at 534, n.19; *Kirstaeng*, 136 S. Ct. at 1985.

[11] *Kirstaeng*, 136 S. Ct. at 1983, 1989.

[12] *Id*. at 1986.

and serving an expert report solely related to it. According to EIG, Tenth Circuit precedent "is unequivocal that 'a failure to mitigate does not apply to an award of statutory damages' " and thus, the Refinery's choice to persist with defense despite being aware of Tenth Circuit law was unreasonable.[13]

The Court disagrees that the Refinery's position on this defense was unreasonable. Tenth Circuit precedent is not "unequivocal" in regard to the application of this defense in the context of copyright infringement.[14] And, as the Refinery pointed out, other courts throughout the country have allowed a defendant to assert this defense even when the plaintiff selects statutory damages.[15] Simply because the Refinery did not prevail on this defense on summary judgment does not mean that the Refinery's assertion of it was unreasonable. "Courts every day see reasonable defenses that ultimately fail (just as they see reasonable claims that come to nothing)."[16]

Similarly, the Refinery's other defenses in this case, while not meritorious, were not unreasonable. Seeking to limit the amount of statutory damages EIG could recover, the Refinery moved for summary judgment arguing that EIG should only be awarded damages for each group registration instead of each individually infringed work. The Court denied its motion relying on language from the Compendium of U.S. Copyright Office Practices, which is published by the U.S. Copyright Office. The Refinery was well-aware of this Compendium when it filed its

---

[13] Doc. 185, p. 11 (quoting *Moothart v. Bell*, 21 F.3d 1499, 1506-07 (10th Cir. 1994)).

[14] EIG relies on *Moothart* in arguing that the failure to mitigate defense is not applicable when statutory damages have been selected. That case, however, involved claims brought under ERISA and not the Copyright Act. *Id*. at 1506-07.

[15] *See, e.g., Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 186 F. Supp. 3d 1370, 1378-79 (N.D. Ga. 2016).

[16] *Kirstaeng*, 136 S. Ct. at 1988.

motion but this does not mean that the Refinery's assertion of such argument was unreasonable. There is a dearth of Tenth Circuit law on statutory damages under the Copyright Act, and the Tenth Circuit may interpret the Compendium differently than this Court.

The Tenth Circuit also has not addressed motions for referral to the U.S. Register of Copyrights. This fact, in addition to the ambiguous language in the Copyright Act stating that where "inaccurate information . . . is alleged, the court shall request the Register of Copyrights to advise the Court whether the information, if known, would have caused the Register of Copyrights to refuse registration,"[17] gave the Refinery a legitimate basis to assert its motion. The Refinery was justified in defending EIG's claims on this basis.

"Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible."[18] In this Circuit, the boundaries of copyright law are fuzzy at best. Not all the Refinery's positions may have been winning positions, but they helped to define the boundaries of copyright law in this circuit. "[P]arties who advance arguments of first impression should not be punished because the litigation could reasonably be seen as contributing to an informed discussion on the demarcation of copyright law."[19]

In any event, EIG seems to ignore that the primary issue at trial was not whether the Refinery infringed *Oil Daily* and *Petroleum Intelligence Weekly*—the Refinery essentially admitted infringement during its closing argument—but the amount of statutory damages EIG should receive. In its closing argument, EIG asked the jury to award the maximum amount of

---

[17] 17 U.S.C. § 411(b)(2).

[18] *Fogerty*, 510 U.S. at 527.

[19] *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2018 WL 1626053, at *4 (C.D. Cal. 2018) (citation omitted).

statutory damages per infringed work for a total amount of $50 million.[20] The Refinery asserted that EIG's damages should be limited based on the statute of limitations and the existence of an implied license. The Refinery proposed to the jury that if it did not find that the Refinery had an implied license for *Petroleum Intelligence Weekly*, the total damage amount should be $390,750, which is based on the lowest statutory damage amount of $750 per work infringed and an infringement period of only three years based on the statute of limitations. Ultimately, the jury found in favor of the Refinery on its statute of limitations defense, limiting EIG's recovery to a three-year period of infringement. EIG prevailed on only 21% of its claims.[21] In addition, the jury awarded EIG a minimal amount of statutory damages—approximately $1.19 million—compared to the $50 million EIG sought.[22] The fact that the Refinery limited the overall statutory damage amount to a mere 2% of what EIG sought demonstrates that their overall defense of the case was objectively reasonable.

        b.      EIG's reasonableness in prosecuting its claims

The Refinery argues that a fee award is not appropriate because EIG took unreasonable litigating positions in prosecuting its claims, particularly when making settlement offers. EIG made three settlement offers during the pendency of the litigation. EIG's first offer, made in

---

[20] Section 504 of the Copyright Act states that an infringer may elect to recover statutory damages for all infringements involved in an action in an amount ranging from $750 to $30,000, and where the infringement is willful, that amount may be increased to $150,000. 17 U.S.C. § 504(c). For each publication, EIG asked the jury to award $30,000 per work infringed for all infringements prior to September 24, 2007. For all infringements after September 24, 2007, EIG asked the jury to award $150,000 per work infringed based on its claim that the Refinery's infringement was willful.

[21] The Refinery proposed the 21% figure and the Court agrees that it is correct. The 21% figure comes from the fact that EIG sought damages for approximately 11 years (June 2004 to June 2015) but was awarded damages for only 2.3 years. Damages for 2.3 years of the 11 years sought is approximately 21% of EIG's claims.

[22] The jury awarded EIG a statutory damage amount of $1,500 per work for Oil Daily, and $2,250 per work for Petroleum Intelligence Weekly.

November 2015, was for a Global Enterprise License for company-wide use by the Refinery of all EIG's publications for three years. EIG offered this license to the Refinery at the market price of $580,000 per year, or $1.74 million total. The Refinery rejected this offer. It also contends that at the time EIG made the offer, EIG informed the Refinery not to make a counter-offer. EIG's second offer, made in October 2016, was for approximately $4.1 million including over $240,000 in attorneys' fees. EIG calculated this offer based on the Refinery's willful infringement of 2,588 works between June 2004 and April 2015 and a statutory damage award of $1,500 per work. EIG's final offer was made at the Court ordered mediation on March 23, 2017, just four months after its second offer. This offer was for $7.1 million including $558,600 in attorneys' fees. At this time, there was still no significant motion practice on EIG's part (the Refinery had submitted its partial motion for summary judgment a few days before) and only one deposition had been taken.

The Refinery also made three settlement offers during the litigation. In response to EIG's offer of $4.1 million, the Refinery offered to settle the case for $40,500. This offer was based on the Refinery's statute of limitations defense and its argument that EIG could only recover statutory damages for each group registration and not each work infringed. In addition, the Refinery extended two Rule 68 offers for judgment: the first for $750,000 on February 5, 2018, and the second for $1.5 million on April 25, 2018. EIG rejected both offers.

A review of these settlements offers explains why this case didn't settle before trial. At most, there were only two reasonable offers made by the parties—EIG's first settlement offer for the Global Enterprise License and the Refinery's final Rule 68 offer—but each of these was

rejected or ignored.[23] The remaining offers were either so exorbitantly high or excessively low such that they did not even invite a counter-offer. EIG's second and third offers, for $4.1 million and $7.1 million respectively, were entirely unreasonable. Neither offer took any of the Refinery's defenses into account. And EIG fails to explain why its settlement position increased by $3 million with its third offer when the Court had not made any significant findings by that time. Likewise, the Refinery's offer of $40,500 was entirely unreasonable as the Refinery refused to acknowledge that its defenses may not prevail on summary judgment or at trial.

Neither party is blameless in its attempt to resolve this case prior to trial. But, EIG's conduct is certainly more unreasonable than the Refinery's given its failure to make at least one reasonable settlement offer after filing this lawsuit. Overall, this factor weighs against awarding EIG its attorneys' fees.

### 2. *Motivation*

EIG claims that its motivation in this case was to protect its federally registered copyrights. EIG argues that it pursued its claims to trial because it had direct, systematic evidence of infringement, and the Refinery was not willing to make a reasonable settlement offer until EIG incurred significant fees and costs. The Refinery argues that EIG's motivation was not to protect its copyrights but to obtain a windfall—as evidenced by its unreasonable settlement offers and over-aggressive prosecution of its claims.

The Refinery points out that in prosecuting its claims, EIG incurred $2,373,381.25 in attorneys' fees. This is $1 million more than the Refinery incurred defending EIG's claims. By

---

[23] The Court disagrees with the Refinery that the Global Enterprise License was not a reasonable settlement offer. The license offered some value to the Refinery. Moreover, after incurring three years of litigation expenses, the Refinery made a Rule 68 offer for 80% of what it would have cost it to purchase the Global Enterprise License in 2015.

the time EIG sued the Refinery for infringement, EIG spent $103,887 reviewing and producing thousands of documents that were likely to have already been reviewed and produced in the 47 other copyright infringement lawsuits EIG had already filed. When taking depositions, EIG often used two or three lawyers to prepare and attend the deposition while only one lawyer questioned the witness. After depositions of key witnesses, two additional lawyers would review the deposition, with one of these lawyers spending significant time creating a "digest" of the deposition. In addition, EIG's counsel billed in quarter-hour increments, inflating its attorneys' fees. Finally, EIG sought a total damage amount of $50 million—a staggering amount compared to the amount of licensing fees it would have obtained over the period of alleged infringement.

The Court acknowledges that protecting one's intellectual property is a valid motivation to pursue litigation. But EIG's litigious conduct belies this claimed motivation. EIG has filed over 50 similar copyright infringement lawsuits against its subscribers. Furthermore, the Refinery introduced evidence at trial showing that EIG uses its copyright enforcement efforts as a potential revenue stream, and as part of these efforts, it planned to sue its larger clients. When EIG's conduct is viewed in this context, the Court cannot conclude that its underlying motivation is solely to protect its copyright registrations.

EIG argues that because the Court dismissed the Refinery's copyright misuse claim, there is no evidence that it acted with improper motivation in litigating this case. That argument, however, inappropriately extends the Court's summary judgment decision. Just because the Court determined that the Refinery had not met its burden to show EIG engaged in copyright misuse does not mean that the Court made any determination regarding EIG's motivation for purposes of awarding attorney's fees. EIG may not have acted in bad faith, but its conduct and

the evidence shows that it operated this litigation as profit center. The Court therefore concludes that this factor weighs against awarding EIG its attorneys' fees.

   3.   *Considerations of deterrence*

The third factor in deciding whether to award fees is the need for compensation and deterrence. EIG contends that there is a critical need in this case for an award of attorney's fees that acts as a "viable deterrent." But the Refinery's actions reflect, and the jury verdict confirms, that the Refinery has been deterred from committing future infringement. The Refinery admitted that it infringed EIG's copyrighted works. It is no longer a subscriber to EIG's publications. And, the $1.2 million judgment far exceeds the $87,000 in license fees the Refinery would have been required to pay for the three-year period EIG is entitled to damages. Thus, there is no reason that the Refinery needs to be further deterred.[24]

Additionally, the fact that the jury found that the Refinery willfully infringed EIG's copyrighted publications does not mean that the Court should automatically award attorney's fees. The jury instructions stated that the purpose of statutory damages "is not only to compensate EIG for its losses but also to penalize the infringer and deter future violations of copyright laws." The instructions also stated in determining the amount of statutory damages, the jury may consider "whether the Refinery intentionally, or willfully, or with reckless disregard infringed EIG's copyrights." The jury ultimately found that the Refinery willfully infringed EIG's copyrighted publications and presumably took this into account in determining the

---

[24] *See Under a Foot Plant, Co. v. Exterior Design, Inc.*, 2017 WL 3840260, at *3 (D. Md. 2017) (stating that when a "plaintiff has successfully vindicated the public interest in protecting copyrighted works by securing substantial damages" that weighs against fee shifting).

statutory damages award. Thus, the jury compensated EIG and deterred the Refinery from future infringement.

EIG cites *Songmaker v. Forward of Kansas, Inc.*,[25] in arguing that a finding of willful infringement sustains an award of attorney's fees. That case, however, was a default judgment case in which the Court awarded fees as a matter of course.[26] EIG also cites *Pisihoyos v. John Wiley & Sons*[27] in arguing that "[c]onsiderations of deterrence may support an award of attorney's fees to the prevailing party where none of the relevant factors justify denying such an award, especially when willful infringement has been found."[28] But here, the other factors set forth in *Fogerty* support denying EIG its fees. Willful infringement alone does not justify an award.

Overall, the Court cannot conclude that the need for compensation and deterrence justifies an award of attorney's fees in this case.

*4. Frivolousness*

A frivolous claim supports an award of attorney's fees. A claim is frivolous when it "lacks an arguable basis either in law or in fact."[29] Neither party contends that this factor impacts the Court's analysis regarding whether EIG is entitled to attorneys' fees. Therefore, the Court will not consider it.

---

[25] 1993 WL 484210 (D. Kan. 1993).

[26] *Id*. at *5.

[27] 2013 WK 1285153 (S.D.N.Y. 2013).

[28] *Id*. at *4 (quoting *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001)).

[29] *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1074 (D. Ariz. 2006) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

*5. Conclusion*

After reviewing the factors set forth by the Supreme Court, the Court declines to grant EIG its attorneys' fees. The Supreme Court has directed district courts to give substantial weight to the objective reasonableness of the losing party's position, and the Court concludes that the Refinery's defenses, while not always meritorious, were objectively reasonable. EIG's unreasonable litigation positions, including its excessively high settlement offers and damages request from the jury, and its overly litigious nature suggest that EIG's motivation was not solely to protect its copyrights but to obtain a windfall. Furthermore, there is no need to advance considerations of compensation and deterrence in this case given that EIG will receive more than $1 million in statutory damages than it would have received had the Refinery paid its license fees for the three-year period EIG is entitled to damages. The Court denies EIG's motion as to its request for attorneys' fees.

**C.    EIG is entitled to its costs.**

EIG asks the Court to award it $274,531.91 in costs under § 505 of the Copyright Act. The Copyright Act allows a district court to award "full costs" as a matter of discretion.[30] District courts may also rely on Rule 54(d) of the Federal Rules of Civil Procedure, which provides that "costs—other than attorney's fees—should be allowed to the prevailing party."[31] The costs available under Rule 54 are set forth in 28 U.S.C. § 1920.[32] While the Tenth Circuit

---

[30] 17 U.S.C. § 505.

[31] Fed. R. Civ. P. 54(d).

[32] Under 28 U.S.C. § 1920, a party may recover (1) fees of the clerk or marshal, (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in this case; (5) docket fees under 18 U.S.C. § 1923 and (6) compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

has not ruled on whether recovery of "full costs" under § 505 is limited to those costs specifically numerated in § 1920, five of the seven Courts of Appeal that have considered the issue have recognized that § 505 allows recovery of additional costs not available under 28 U.S.C. § 1920.[33]

The Refinery contends that EIG should not be awarded its costs under § 505 of the Copyright Act, but it does not address whether EIG should be awarded its "full costs" under § 505 as opposed to those only provided by in 28 U.S.C. § 1920. Instead, the Refinery generally argues that if the Court awards EIG its costs, then the Court should reduce the requested amount because of EIG's over-lawyering and duplication in this case. The Court has already taken this argument into account in denying EIG its attorneys' fees and declines to do so again with respect to EIG's costs. Accordingly, the Court will award EIG its "full costs" under § 505 of the Copyright Act.[34]

**D.   The Refinery's Rule 68 Offer for Judgment**

The Refinery moves the Court for an award of its attorneys' fees and costs incurred after April 25, 2018, pursuant to Rule 68. Under Rule 68(a), "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."[35] If the opposing party obtains a judgment that is less favorable than the unaccepted

---

[33] *Twentieth Century Fox Film Corp. v. Enter. Distributing*, 429 F.3d 869, 885 (9th Cir. 2005) ("[c]onstruing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute."); *Invessys, Inc. v. McGraw-Hill Cos., Ltd*., 369 F.3d 16, 22-25 (1st Cir. 2004); *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 457-58 (7th Cir. 2001); *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002).

[34] As noted later in this Order, this amount of costs will be reduced pursuant to Rule 68.

[35] Fed. R. Civ. P. 68(a).

offer, the opposing party "must pay the costs incurred after the offer was made."[36] The purpose of Rule 68 is "to encourage settlement and avoid litigation."[37] The language of the rule is mandatory and leaves no discretion to the district court.[38]

The Refinery made a second offer for judgment on April 25, 2018, for $1.5 million. This amount is greater than the $1.19 million judgment plus the $274,531.91 in "full costs" EIG asked the Court to award.[39] Therefore, the Court must determine whether the Refinery is entitled to its post-offer attorneys' fees and costs under Rule 68.

   1.    *The Refinery is not entitled to its post-offer attorneys' fees.*

Relying on Eleventh Circuit precedent in *Jordan v. Time, Inc.*,[40] the Refinery asks the Court to award its post-offer attorneys' fees. EIG responds that that the Refinery is not entitled to its attorneys' fees because it is not the prevailing party. EIG's argument relies on the Supreme Court's language in *Marek v. Chesny*[41] and other Courts of Appeals decisions applying this language to deny attorney's fees to a non-prevailing party in a copyright infringement lawsuit.

In *Marek*, the Supreme Court held that a prevailing civil rights plaintiff who was awarded an amount less than the defendant's Rule 68 offer of judgment could not recover post-offer attorney's fees under 42 U.S.C. § 1988.[42] In making this determination, the Court explained that

---

[36] Fed. R. Civ. P. 68(d).

[37] *Marek v. Chesny*, 473 U.S. 1, 5 (1985).

[38] *Lintz v. Am. Gen. Fin.*, 76 F. Supp. 2d 1200, 1211 (D. Kan. 1999).

[39] *See* Fed. R. Civ. P. 68(d); *Bogan v. Boston*, 489 F.3d 417, 431 (1st Cir. 2007) ("The 'judgment finally obtained' includes the damage award plus pre-offer fees and costs actually awarded.").

[40] 111 F.3d 102 (11th Cir. 1997) (per curiam).

[41] 473 U.S. 1 (1985).

[42] Id. at 1.

"the most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs *properly awardable under the relevant substantive statute* or other authority."[43] Thus, because 42 U.S.C. § 1988 permitted a prevailing plaintiff to recover "a reasonable attorney's fee as part of the costs," the Court held that "such fees are subject to the cost-shifting provision of Rule 68."[44]

Section 505 of the Copyright Act includes attorney's fees as part of the "costs" a prevailing party may recover. Neither the Supreme Court nor the Tenth Circuit, however, has addressed the situation in this case—whether a losing defendant may recover its post-offer fees from a prevailing plaintiff under Rule 68. There is a split of authority among the courts who have addressed this issue. The Refinery asks the Court to adopt the minority position, which is set forth by the Eleventh Circuit in *Jordan*. Under this position, a non-prevailing defendant may recover its post-offer attorney's fees under Rule 68.[45] In its decision, the Eleventh Circuit focused on the *Marek* Court's observation that Rule 68 includes an award of attorney's fees when the underlying statute so prescribes.[46] Finding Rule 68 to be mandatory, the Eleventh Circuit awarded a losing defendant all attorney's fees incurred after making its Rule 68 offer.[47]

EIG asks this Court to adopt the majority position. Under this position, the Copyright Act provides for an award of fees only to the prevailing party, non-prevailing defendants cannot

---

[43] *Id*. at 9 (emphasis added).

[44] *Id*. at 8-9.

[45] *Jordan*, 111 F.3d at 105; *Lucas v. Wild Dunes Real Estate, Inc*., 197 F.R.D. 175-77 (D.S.C. 2000); *Baker v. Urban Outfitters, Inc*., 431 F. Supp. 2d 351, 361-62 (S.D.N.Y. 2006).

[46] *Jordan*, 111 F.3d at 105.

[47] *Id*.

recover fees as part of their Rule 68 costs.[48] This position is outlined in the Seventh Circuit's decision in *Harbor Motor Company, Inc. v. Arnell Chevrolet-Geo, Inc*. In that case, the Seventh Circuit relied on the *Marek* Court's language that the term "costs" in Rule 68 referred to all costs "properly awardable under the relevant substantive statute," and thus concluded that a non-prevailing defendant could not recover attorney's fees under Rule 68 because such fees were not "properly awardable" under the Copyright Act.[49]

This Court finds the majority position more persuasive. In *Jordan*, the Eleventh Circuit did not consider *Marek's* "properly awardable" language and thus did not focus on the Copyright Act's limitation that attorney's fees are only awardable to the prevailing party. In addition, the Eleventh Circuit's approach to has been criticized by other courts, so much so that the Eleventh Circuit has even acknowledged its minority opinion.[50] Therefore, the Court declines to award the Refinery its post-offer attorneys' fees.

2. *The parties' post-offer costs.*

Because the Refinery's offer for judgment was greater than the $1.19 million judgment and the costs awarded to EIG, then EIG must pay the costs incurred after the second offer was made.[51] This means that EIG must pay the costs the Refinery incurred after April 25, 2018.[52] It also means that EIG's award of costs must be reduced by the amount of costs it incurred after

---

[48] *See Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc*., 265 F.3d 638, 645-47 (7th Cir. 2001); *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1034 (9th Cir. 2013); *Energy Intell. Group, Inc. v. Kayne Anderson Capital Advisors, LP*, 326 F.R.D. 453, 460 (S.D. Tex. 2018); *Boisson v. Banian Ltd*., 221 F.R.D. 378, 382 (E.D.N.Y. 2004); *Bruce v. Weekly World News, Inc*., 203 F.R.D. 51, 55 (D. Mass. 2001).

[49] 265 F.3d at 647.

[50] *See Utility Automation 2000, Inc. v. Choctawatchee Elec. Co-op., Inc*., 298 F.3d 1238, 1246 n.6 (11th Cir. 2002).

[51] Fed. R. Civ. P. 68(d).

[52] *Lintz*, 76 F. Supp. 2d at 1211.

April 25, 2018.  In other words, the Refinery is not required to pay EIG the costs EIG incurred after April 25, 2018.  The parties have not provided the Court with the amount of costs each incurred after April 25, 2018.[53]  The Court therefore orders the parties to consult as to the allowable costs each is to receive, and at the appropriate time, each party should file with the Clerk a Bill of Costs listing the taxable and non-taxable costs each is entitled to receive.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Attorneys' Fees and Costs Pursuant to Federal Rule 69 (Doc. 180) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorneys' Fees (Doc. 181) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 30th day of January, 2019.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[53] The Refinery has provided the costs it incurred beginning April 25, 2018.  However, that is the date it made its second offer for judgment, and EIG is only required to pay costs incurred after the offer was made, which would be costs incurred beginning April 26, 2018.